# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

## CASE NO. 1:17-CV-22902-JLK

SARAH D'ANTONIO,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.,

    Defendant.

_____/

## ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT ROYAL CARIBBEAN CRUISES LTD.

THIS CAUSE comes before the Court upon Defendant Royal Caribbean Cruises Ltd.'s ("Royal Caribbean") Motion for Summary Judgment (DE 18), filed on October 8, 2018.[1]

### I. BACKGROUND

This suit arises out of Plaintiff Sarah D'antonio's fall while a passenger on Defendant Royal Caribbean's cruise ship, *Freedom of the Seas*, on October 8, 2016 (DE 1, ¶ 10, 11). D'antonio alleges in her Complaint that "she tripped on an unmarked metal strip and/or threshold in the Casino on Deck 4 and fell" (*id.* ¶ 11), and that Royal Caribbean was negligent in its "[f]ailure to maintain the subject area in a reasonably safe condition," "[f]ailure to adequately and regularly inspect the subject area for hazards, such as tripping hazards," "[f]ailure to adequately warn the Plaintiff of the danger posed by the threshold," "[f]ailure to provide a reasonably safe walkway for passengers in the subject area," and for breaching other duties of care (*id.* ¶ 13).

---

[1] Plaintiff filed a Response in Opposition (DE 32) on November 1, 2018; Defendant filed a Reply (DE 48) on November 8, 2018. Accordingly, this matter is ripe for disposition.

According to her deposition testimony, D'antonio is a 71 year-old woman (69 at the time of the accident) who retired in 2010 (*see* DE 18-3, at 5, 7). On a Saturday night on the cruise, she had finished dinner with friends and was walking with them to the theater (*see id.* at 29–34). She saw that the elevators were "mobbed with people trying to get on" (*id.* at 34:15-16), so she and one of the friends (Maurine) "proceeded through" the casino, which also proved to be "very crowded" (*see id.* at 36). Maurine was ahead of D'antonio with "[p]robably about six" people between them when she fell (*id.* at 36:16) close to a casino gaming table (*see id.* at 37:9). She testifies that she was walking on a walkway (*id.* at 49:13-15), but was walking "[v]ery close" to the gaming table or chairs when she fell, and that she was doing so because "[i]t was crowded, there [were] people going every which way" (*id.* at 43:11-16).

When asked "[what] caused [her] to fall" she responds "I don't know" (*id.* at 40:8-9). She goes on to testify: "I think something got caught, the chair got caught in my shoe or the metal" (*id.* at 40:20-21). Then: "I was walking along and all of the sudden I was on the floor. Whether it was the chair—the chair comes out, there were chairs where you walk along, and the chairs they sort of branch out and they have feet rest on them. Whether I went into that and then went on to the carpet" (*id.* at 41:6-11). She clarifies, "The only thing I remember is the next thing I was on the floor" (*id.* at 42:10-11). When asked if she has a "specific recollection of [her] foot catching on a metal stripping" or "catching on the chair," she responds "No" to both (*id.* at 42:12-17). When asked "you identify the metal strip and chair in this letter [to Royal Caribbean], but is it fair to say that you don't know if in fact that's what occurred or which one caused you to fall?" she responds, "All I know is that I fell" (*id.* at 56).

Later the same night, the ship's "Medical Secretary" sent an email to the ship's staff ("Guest Accident Notification") stating that "below mentioned guest [Sarah D'antonio] has

reported an accident to the medical center" stating that she "tripped on bottom of a chair" (DE 32-2).

D'antonio responds in an interrogatory that she "suffered a broken right hip" and ultimately needed 20 stitches for a laceration on her right knee (DE 18-1, at 6).

Discovery closed in this case on October 3, 2018, providing the parties with thirteen months to conduct discovery (*see* DE 9). In time for the Court's October 8, 2018 deadline for all motions (*id.*), Defendant filed its Motion for Summary Judgment (DE 18). On November 20, 2018, the Court granted Royal Caribbean's *Daubert* challenge to D'antonio's liability expert, Dr. Marc B. Wilson, and D'antonio's *Daubert* challenge to Royal Caribbean's liability expert, Dr. Zdenek Hejzlar (DE 54).

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where there is "no *genuine* issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is genuine if a reasonable jury could return a verdict for the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). A fact is material if it may affect the outcome of the case under the applicable substantive law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

If there is a conflict between the parties' evidence, the nonmoving party's evidence is presumed true and all reasonable inferences are drawn in the nonmoving party's favor. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder could draw more than one inference from the facts, creating a genuine issue of material fact, summary

3

judgment should not be granted. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The moving party has the burden of establishing both the absence of a genuine material fact and that it is entitled to judgment as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986).

## B. Maritime Negligence

An injury on a ship, by itself, is not sufficient for liability against the ship. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984) ("A carrier by sea . . . is not liable to passengers as an insurer, but only for its negligence."). To prevail on a maritime negligence claim, a plaintiff must also establish that (1) the defendant owed the plaintiff a duty (*e.g.*, to maintain the ship in a safe condition for passengers, to warn passengers of dangers that are not open and obvious); (2) the defendant breached the duty; and (3) the breach actually and proximately caused injury to the plaintiff. *See, e.g., Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). The duty of care that a shipowner owes to passengers is "ordinary reasonable care under the circumstances." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). Therefore, the plaintiff must prove there was a condition on the ship that not only caused his or her injury, but also that could reasonably be seen as unsafe.

In addition, "as a prerequisite to imposing liability, [a ship operator must have had] actual or constructive notice of the unsafe condition," meaning that it knew or reasonably should have known of the condition. *Id*; *see also Pizzino v. NCL (Bah.) Ltd.*, 709 F. App'x 563, 565 (11th Cir. 2017) (citing *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1357–58 (11th Cir. 1990)) (rejecting that a ship's creating or maintaining an unsafe condition obviates the requirement of notice to the ship). An example of constructive notice is where a "hazard [has] been present for a period of time so lengthy as to [reasonably] invite corrective measures" by the shipowner.

4

*Keefe*, 867 F.2d at 1322. Evidence of "substantially similar" prior accidents or occurrences may also support the ship owner having had notice. *See Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1287–88 (11th Cir. 2015).

### C. D'antonio Has Not Carried Her Burden

As a preliminary consideration, Plaintiff Sarah D'antonio has identified no genuine issue of material fact for which summary judgment would be inappropriate, where the disputed facts she lists in her Response are either (a) opinions about what she sees in the video; (b) opinions about what she thinks her deposition testimony demonstrates; (c) legal arguments; or (d) opinions that rely on an expert witness who has been excluded under *Daubert* (*see* DE 54)[2] (*see* DE 32, at 5–11).

### 1. There is Insufficient Evidence of an Unsafe Condition

D'antonio has put forth insufficient evidence of an unsafe condition that may have caused her fall, and in particular *no* evidence of an obstruction to the walkway. D'antonio testifies in her deposition that she "think[s]" that a chair or a metal strip "got caught in [her] shoe" (DE 18-3, at 40:20-21) and speculates it could have been the chair leg ("the chairs they sort of branch out") (*id.* at 41:9-10);[3] however, she repeatedly states that she does not know what caused her to fall (*see, e.g., id.* at 40:8-9, 42:12-17, 56), and states that "The *only* thing I remember is the next thing I was on the floor" (*id.* at 42:10-11 (emphasis added)). There are no witnesses or any evidence that an obstruction existed in the walkway at the time of the accident. The Guest

---

[2] Even if any of the photographs taken by the expert witnesses were admissible at trial, the Court finds that they actually do not show either a metal strip or any other obstruction to her walkway.

[3] D'antonio's Complaint alleges "she tripped on an unmarked metal strip and/or threshold" (DE 1, ¶ 11), whereas her deposition testimony mentions the chair leg. The Complaint was never amended; nevertheless, even were the Court to consider the chair leg instead of a metal strip or threshold, D'antonio has simply not provided evidence a chair leg was obstructing the walkway.

Accident Notification provides a one-line summary of D'antonio's opinion to medical personnel as to her supposition of what she thinks may have caused her fall. There is no testimony, by anyone, that a chair was blocking or obstructing the open walkway. The Court finds that this is nothing more than evidence that she *could* have tripped on the chair, not evidence of a walkway obstruction. The overhead security camera footage from the time of D'antonio's fall—even were it admissible as evidence, to which D'antonio objects on grounds that it is "[through] a fisheye lens, at a distorted angle" (DE 32, at 1)—does not show the fall itself where the view is blocked by a chair. D'antonio herself testifies in her deposition that the video is "very unclear to me" and she could "hardly tell it was me" (DE 18-3, at 47:14-21). No obstruction, of any description, is shown in the video.[4] In summary, it is the plaintiff's burden to show there was an objectively unsafe condition that caused her injury, and the Court concludes that D'antonio has not carried this burden. This record contains no competent evidence that the walkway was obstructed.

## 2. There is Insufficient Evidence Defendant Had Notice

Regardless, the issue of Royal Caribbean's actual or constructive notice of any unsafe condition is fatal to D'antonio's case. Royal Caribbean's responses to D'antonio's interrogatories reveal eight past "slips and/or trip and falls in the area where Plaintiff alleges her injury occurred (the Casino aboard the vessel Freedom)" (DE 18-5).[5] None of the past incidents involved a trip on a chair leg or other walkway obstruction. Moreover, D'antonio has not carried her burden in establishing how the fourth incident, a trip "over a floor divider," is substantially similar to any "metal strip or threshold" in the walkway she alleges caused her fall such that it

---

[4] However, the Court notes that the footage does show that, immediately prior to the accident, no one was gambling, the chairs did not have anyone sitting in them, and were orderly arranged at the gaming table.

[5] The incidents cited in the responses to interrogatories are (1) a fall "while transitioning from [a] walker to a chair;" (2) a fall "while trying to sit in a chair;" (3) a trip "over another passenger's cane;" (4) a trip "over a floor divider;" (5) a trip "for an unknown reason;" (6) a trip "over part of a railing;" (7) a slip "descending stairs;" and (8) a fall after "miss[ing] a step while descending stairs" (DE 18-5).

would put the ship on notice. *See Sorrels*, 796 F.3d at 1287–88. Therefore, Royal Caribbean is correct that "[t]here is no evidence of prior [substantially] similar accidents" (DE 18, at 9–10). On the night of D'antonio's unfortunate accident, many people walked through the walkway before her ("It was crowded, there [were] people going every which way" (DE 18-3, at 43:15-16)) without incident, logically suggesting no obstruction existed; or that the ship should have known of an unsafe condition in the walkway.

D'antonio argues that Royal Caribbean's "guest familiarization video" for passengers is evidence of notice "of the hazards obstacles/obstructions pose to passengers," where the video "highlights the need to maintain a clear walking area" (DE 32, at 20). However, the video merely warns guests to keep their own cabins (not the casino walkway) free of obstacles "like suitcases and other personal items" (not chairs or metal strips) (*id.*). *Compare Frasca v. NCL (Bah.) Ltd.*, 654 F. App'x 949, 953–54 (11th Cir. 2016) (safety video supported notice where warned of slippery decks and the plaintiff slipped on a deck). Therefore, D'antonio has simply not carried her burden of establishing that Royal Caribbean had notice of any unsafe condition in the casino walkway.

## III. CONCLUSION

Discovery has now concluded, and viewing the evidence in the light most favorable to Sarah D'antonio, there is insufficient evidence that Royal Caribbean was negligent (evidence of a walkway obstruction or that it had notice of any unsafe condition). Therefore, Royal Caribbean is entitled to judgment as a matter of law.

Accordingly, and the Court being otherwise fully informed, it is **ORDERED, ADJUDGED, and DECREED** that Defendant's Motion for Summary Judgment **(DE 18)** is

7

hereby **GRANTED**. Judgment is entered in favor of Defendant and the case is **DISMISSED.** The Court retains jurisdiction for determination of fees and costs, if any.

**DONE** and **ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 30th day of November, 2018.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:     **All Counsel of Record**